UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SANDRA PETERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:07 CV 631 |
| | ) |
| WAL-MART, | ) |
| | ) |
| Defendant. | ) |

## OPINION and ORDER

Before the court is plaintiff Sandra Peters' motion for summary judgment (DE # 26); defendant Wal-Mart's motion to strike plaintiff's summary judgment motion and its attached exhibits (DE # 99); and plaintiff's motion to strike the affidavits used by defendant in its response to plaintiff's summary judgment motion (DE # 106). For the reasons discussed herein, each motion is denied.

I.  BACKGROUND

Plaintiff has worked as an apparel stocker at Wal-Mart since July of 2005 (DE # 1 at 3) and, as far as can be discerned from plaintiff's filings, continues to be employed at Wal-Mart's Mishawaka, Indiana, store, but has been on medical leave since May 30, 2007. (DE # 109 at 6; DE # 26 at 11, 19.) Plaintiff's lawsuit appears to stem from her contentious relationship with her supervisor, an assistant manager at Wal-Mart named Rodney Shoaf. It appears that plaintiff also had a strenuous relationship with a co-worker named Athenia Cook, although plaintiff emphasizes that Cook did not discriminate against her or harass her. (DE # 26 at 2.)

Plaintiff initially filed her complaint and the present motion for summary judgment *pro se*, but later retained counsel. Through counsel, plaintiff filed her reply brief in support of the present motion, as well as other filings in an attempt to correct the procedural and evidentiary problems of plaintiff's *pro se* filings. However, plaintiff's filings– both those filed *pro se* and those filed through counsel– "appear to have simply collected the sum total of all the unpleasant events in [her] work history . . . , dumped them into the legal mixing bowl of this lawsuit, set the Title VII-blender to puree and poured the resulting blob on the court." *Davis v. Con-Way Transp. C. Express, Inc.*, 368 F.3d 776, 782 (7th Cir. 2004). However, "[j]udges are not like pigs, hunting for truffles buried in briefs" and other filings. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). The court has expended considerable time and resources in attempting to decipher plaintiff's arguments regarding each of her claims. In the analysis below, the court presents the best characterization of what it believes plaintiff has attempted to argue. A few events were referenced repeatedly in the filings and warrant summarizing.

On September 20, 2006, plaintiff was asked by Shoaf to work in groceries, but was diverted to the apparel department by a customer who needed help obtaining a fitting room. Cook interrupted her "rudely" and asked the customer if she needed help. Plaintiff told Cook "I got this" and Cook stormed off. Shoaf later approached plaintiff and told her to go work in the grocery department. Plaintiff asked why she was being moved, Shoaf repeated his instruction, and plaintiff stated that she wanted to file a report and that the fitting room customer was her witness to what transpired between

herself and Cook. Shoaf stated that plaintiff was refusing to work and should have gone to groceries as she was originally instructed. (DE # 26-3 at 1.)

Plaintiff told Shoaf that she couldn't continue "going through these things" and that she didn't trust him. Plaintiff told Shoaf that she wanted to talk to a co-manager named Brian and walked away. Plaintiff alleges that she felt humiliated by Shoaf and thought his actions were "inappropriate." Plaintiff felt she was not allowed to talk and that Shoaf was "contemptible and stabbing with his orders and didn't seem to care what I had to say" and "took Athenia's side." Plaintiff alleges that Shoaf plays favorites and "discriminates against me" and is "harassing." According to plaintiff, "no manager should be allowed to treat their employees the way Rodney has been allowed to treat me." (DE # 26-3 at 1-3.)

On May 30, 2007, plaintiff had a verbal altercation with Shoaf. Plaintiff told Shoaf there was no way she was going to get 6 pallets of freight processed with her "medical condition." When Shoaf asked what the medical condition was and whether there were any restrictions on file, plaintiff told Shoaf that she had high blood pressure but there were not any restrictions on file. Shoaf asked her to get documentation and told plaintiff that if there was not anything from a doctor in her file she should be able to get her work done. Plaintiff replied that there was no way she would get it done. Plaintiff said she was going to the emergency room to get documentation because Shoaf was prying into her medical history and told Shoaf that he was a liar. (DE # 26-5 at 3.) After the altercation, at approximately 10:30 p.m., plaintiff left work and went to the hospital where she remained overnight. Plaintiff has been on medical leave ever since, and

contends she suffers from post-traumatic stress disorder as a result of the abuse she experienced. (DE # 26 at 11.) Plaintiff further claims that Shoaf did not file a work-related incident report or report the incident to the Indiana Workman's Compensation Board until 5 months later. (*Id.* at 12.)

In her complaint, plaintiff claims that defendant discriminated against her because of her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, and in violation of her equal rights under law pursuant to 42 U.S.C. § 1981. Plaintiff also alleges that defendant created a hostile work environment for her, which caused her to suffer from post-traumatic stress disorder. Plaintiff further claims that defendant retaliated against her for filing a charge with the United States Equal Employment Opportunity Commission ("EEOC"). (DE # 1.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for the motion and of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The party opposing the motion must "affirmatively demonstrate, by specific factual allegations, that there is a genuine issue

of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988).

This court's function is not to weigh the evidence but merely to determine if "there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). This court must ask whether "there are genuine factual issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. In the summary judgment context, a "genuine issue" is not a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "a genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). In assessing whether a genuine issue of material fact exists, the court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255; *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). In this case, plaintiff has the ultimate burden of persuasion at trial; accordingly, with regard to her motion for summary judgment, plaintiff must essentially show that the evidence is so powerful that no reasonable jury would be free to disbelieve it. *See* MOORE'S FED. PRACTICE 3d, § 56.13[1].

### III. DISCUSSION

Plaintiff argues that there are no genuine issues as to any material facts regarding her claims. However, the court must construe the facts and draw all reasonable inferences in favor of the non-moving party, here Wal-Mart. *Basith*, 241 F.3d at 926. As explained in more detail below, after doing so, the court finds that "the evidence is such

that a reasonable jury could find for the non-movant." *Buscaglia*, 25 F.3d at 534. Accordingly, plaintiff is not entitled to summary judgment on any of her claims.

### A.  Plaintiff's Race and Gender Discrimination Claims

Plaintiff alleges that defendant discriminated against her because of her race and gender. To succeed on these claims, plaintiff would need to, at the least, establish that: (1) she belonged to a protected class; (2) she was meeting defendant's legitimate expectations; (3) she suffered an adverse employment action; and (4) defendant treated similarly situated individuals who were not in her protected class more favorably. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

Plaintiff's voluminous filings can be boiled down to essentially the following allegations against defendant: (1) defendant did not allow plaintiff to modify her schedule; (2) plaintiff was reprimanded rudely by her supervisor with regard to her September 20, 2006, dispute with co-worker Cook; (3) plaintiff was not trained on how to use a "walkie-stacker," unlike fellow employees who were white males; (4) plaintiff was required to take a drug test after a workplace injury involving a machine scrubber in accordance with company policy but the caucasian co-worker who caused the accident was not; (5) defendant kept plaintiff under "close surveillance"; (6) defendant gave her a written coaching in May 2007; (7) defendant gave plaintiff difficult work assignments; (8) the co-worker who caused plaintiff to be injured on the job was disciplined differently than a co-worker who caused a caucasian co-worker's injury; (9) defendant improperly calculated plaintiff's pay; (10) defendant improperly handled

plaintiff's worker's compensation benefits claim; and (11) defendant denied plaintiff promotional opportunities.

Plaintiff and defendant disagree on the factual circumstances underlying virtually every allegation plaintiff makes. If the court accepted defendant's version of what happened over the course of plaintiff's employment, as it would be required to, *Basith*, 241 F.3d at 926, it would conclude that a reasonable jury *could* find for defendant. This alone is reason enough to deny plaintiff's motion for summary judgment.

But plaintiff's own version of the facts are also inadequate to determine that she should succeed on her claim as a matter of law. "'Not everything that makes an employee unhappy is an actionable adverse action.'" *Johnson v. Siemens Bldg. Techs., Inc.*, 273 Fed. Appx. 543, 547 (7th Cir. 2008) (quoting *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007), alterations omitted). An adverse employment action is a "'materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Cerros v. Steel Tech., Inc.*, 288 F.3d 1040, 1044 (7th Cir. 2002), alterations in *Johnson*).

Given the facts plaintiff alleges to support the first seven allegations enumerated above, a reasonable jury could conclude that plaintiff did not suffer any adverse employment action. Indeed, courts have held that allegations like plaintiff's fail as a matter of law to establish an adverse employment action. *Grube v. Lau Indust., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (employer's decisions regarding plaintiff's working hours do not rise to level of adverse employment action); *Oest v. Ill. Dep't of Corrs.*, 240 F.3d

7

605, 613 (7th Cir. 2001) (oral reprimands that carry no tangible job consequence are not adverse employment actions); *Johnson,* 273 Fed. Appx. at 547-48 (failure to train was not adverse employment action where compensation was unaffected); *Keys v. Foamex, L.P.,* 264 Fed. Appx. 507, 510-11 (7th Cir. 2008) (drug test requirement performed in routine fashion in accordance with regular and legitimate practices of employer is not actionable adverse employment action); *Strasser v. Sec. Fed. Sav. Bank,* No. 4:00CV0070AS, 2002 WL 1023148, at *7 (N.D. Ind. Mar. 28, 2002) (frequent surveillance does not constitute adverse employment action); *Longstreet v. Ill. Dep't of Corrs.,* 276 F.3d 379, 384 (7th Cir. 2002) (negative performance evaluations that did not result in tangible job consequences were not adverse employment actions); *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 539 (7th Cir. 2007) ("harder work assignments do not constitute an adverse employment action").

Plaintiff's eighth allegation– that the co-worker who caused plaintiff's mechanical scrubber-related injury was disciplined differently than a co-worker who caused a caucasian co-worker's injury–does not suggest that any employment action, much less an adverse one, was taken against her at all. Plaintiff's ninth and tenth allegations are that defendant improperly calculated plaintiff's pay and that defendant improperly handled plaintiff's worker's compensation benefits claim. However, plaintiff does not present admissible evidence that she was treated less favorably than other similarly situated associates when it came to her pay or the handling of her worker's compensation benefits claim. *Ford v. Minteq Shapes and Servs., Inc.,* 587 F.3d 845, 848 (7th Cir. 2009) (claim that plaintiff was treated disparately with regard to

compensation failed without evidence that similarly situated workers received more compensation).

As to plaintiff's last claim that she was denied promotional opportunities, the Seventh Circuit has made it clear that to succeed on a failure-to-promote claim, a plaintiff must show, amongst other things, that she applied for the position sought. *Grayson v. City of Chicago,* 317 F.3d 745, 748 (7th Cir. 2003). However, plaintiff only alleges that she "tried to apply," without explaining how, and that her July 2006 evaluation "indicates [her] ambition" to go into management. (DE # 26 at 13.) These allegations, even if true, are not sufficient to establish that plaintiff applied for the position sought. In sum, whether the court views the facts in a light most favorable to defendant or accepts plaintiff's version of the facts, the court cannot find that plaintiff should succeed on her discrimination claim as a matter of law. Accordingly, plaintiff is not entitled to summary judgment on this claim.

**B.    Plaintiff's Harassment Claims**

Plaintiff also alleges that defendant illegally harassed her and created a hostile work environment. In support of her harassment claims, plaintiff alleges that she was exposed to racial epithets in phone calls that were made by outside callers into the store and that the phone calls were not investigated adequately. (DE # 26 at 14-16.) Plaintiff suspects that the calls were actually made by Wal-Mart employees. (*Id.*) Plaintiff also alleges that her supervisor, Shoaf, "verbally berated" her after plaintiff's argument with Cook about assisting a customer in a fitting room. (*Id.* at 5.)

Defendant avers that there is no basis for employer liability because there is no evidence that the calls were made by a Wal-Mart employee, because one night of calls does not create a hostile work environment, and because defendant thoroughly investigated the calls. (DE #101 at 12; DE # 101-3 at 4-5.) Defendant has submitted the affidavits of its store manager, Brian Garner, in which Garner avers that it took all of the steps that it could to end the calls by seeing if they could be traced, to no avail. (DE # 101-5 at 1-2.) Shoaf also attests via affidavit that he merely tried to end the argument between plaintiff and Cook after the altercation involving the fitting room. (DE # 101-3 at 2-3.)

For her harassment claim to succeed, plaintiff would need to establish at least that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her sex or race; (3) the harassment was so severe or pervasive as to alter the conditions of the plaintiff's work environment by creating a hostile or abusive situation; and (4) there was a basis for employer liability. *Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021, 1029 (7th Cir. 2004).

Defendant points out that the harassing phone calls came from outside of Wal-Mart, but employer liability can be imposed even when the harassment is committed by third parties. *Lapka v. Chertoff,* 517 F.3d 974, 984 n.2 (7th Cir. 2008). Defendant can be liable for the harassing phone calls if it "unreasonably fail[ed] to take appropriate corrective action . . . reasonably likely to prevent the misconduct from recurring." *Id.* However, Wal-Mart has presented sufficient evidence–including affidavits from Wal-Mart managers Shoaf and Brian Garner–to create a genuine issue of material fact as to

whether it took appropriate corrective action in the form of investigating, or, if it failed to take appropriate action, whether that failure was still reasonable. (*See* Def.'s Resp. 11-12 and exhibits cited therein.)

As for Shoaf's treatment of plaintiff, the totality of plaintiff's allegations with regard to Shoaf are simply not sufficient to show that there are no genuine issues for trial on the question of whether Shoaf's alleged harassment of plaintiff was based on sex or race. Plaintiff alleges that Shoaf was "verbally abusive," "sided with Ms. Cook's account of a disagreement," "verbally berated" plaintiff in front of customers and other employees, was "unprofessional and out of control," and generally treated plaintiff in an uncivilized manner. (Pl.'s Mot. 6-7.) Defendant has provided counter-evidence denying that such behavior occurred, as well as sufficient evidence to raise a geniune issue of fact as to whether there existed non-race or -sex based reasons for Shoaf's decision to discipline plaintiff after the altercation and at other times. (*See, e.g.,* Shoaf Aff., DE # 101-3, at 2-3.) Because a reasonable jury *could* find for defendant on the question of whether Shoaf's treatment of plaintiff was race- or sex-based, summary judgment for plaintiff on this claim is inappropriate.

There are also genuine issues of material fact as to whether or not any of the purported harassment was so severe or pervasive as to alter the conditions of the plaintiff's work environment by creating a hostile or abusive situation. Plaintiff claims that the hostile and abusive nature of the situation is "evidenced by a written warning she received for being unproductive on May 18, 2007." (DE # 26 at 19.) However, having reviewed the facts in a light most favorable to defendant, *Anderson*, 477 U.S. at

11

255, the court finds that a reasonable jury could find that plaintiff's written warning for lack of productivity resulted from an actual lack of productivity. Plaintiff also argues that she suffers from PTSD as a result of the abuse she allegedly endured at Wal-Mart (DE # 26 at 19), but the court cannot conclude as a matter of law that plaintiff's PTSD resulted from severe and pervasive harassment at the hands of defendant; a reasonable jury could believe plaintiff on this point, but a reasonable jury could also disbelieve plaintiff. Accordingly, summary judgment is inappropriate and the matter should be submitted to a jury.

      C.      **Plaintiff's Retaliation Claims**

Plaintiff also alleges that defendant retaliated against her for filing charges with the EEOC. In support of her retaliation claim, plaintiff alleges that defendant purposefully delayed reporting her worker's compensation injury and then, later, denied her worker's compensation claim in retaliation for plaintiff's decision to file charges with the EEOC. (DE # 26 at 11-12.) Plaintiff also alleges that because she filed charges with the EEOC, Shoaf had her under close surveillance and often sought plaintiff out on the sales floor. (*Id.* at 21.)

In response, defendant has submitted the affidavit of store manager Schumacher, in which he avers that plaintiff was denied worker's compensation because, for her first 4 months of leave, plaintiff's medical documentation "specifically indicated that her health problems were not related to her work." (DE # 101-2 at 7.) Schumacher further attests that defendant filed a worker's compensation incident report as soon as plaintiff indicated for the first time that her condition was work-related on September 17, 2007.

12

(*Id.*) Defendant has also submitted the affidavit of supervisor Shoaf, in which he states that he sought plaintiff out on the sales floor merely to give plaintiff her daily work assignment when plaintiff failed to attend the 10 p.m. meeting at which stockers, such as plaintiff, were given their daily work assignments. (DE # 101-3 at 3-4.) Furthermore, Shoaf states that he did not have plaintiff under surveillance. (*Id.*)

For plaintiff's retaliation claim to succeed, plaintiff would need to establish at least that she suffered an adverse employment action. *Roney v. Ill. Dep't of Transp.,* 474 F.3d 455, 459 (7th Cir. 2007). "[T]he standards for actionable adverse action for discrimination claims . . . and retaliation claims . . . are not identical. . . . In the retaliation context, an employer's action will be actionable . . . if it would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Whittaker v. N. Ill. Univ.,* 424 F.3d 640, 648 (7th Cir. 2005) (citing *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658 (7th Cir. 2005)). Here, there are disputed, genuine issues of material fact as to whether the actions plaintiff alleges defendant took against her in fact occurred. For example, based on the evidence presently before this court, it is not clear whether defendant delayed reporting plaintiff's alleged work-related injury or if plaintiff caused the delay herself. It also is uncertain whether or not defendant had plaintiff under surveillance. Viewing the evidence in a light most favorable to defendant, *Anderson*, 477 U.S. at 255, a reasonable jury *could* find for defendant. As a result, plaintiff is not entitled to summary judgment on her retaliation claim.

### D. The Parties' Motions to Strike

Defendant has moved to strike plaintiff's summary judgment motion and also its supporting exhibits due to various procedural and evidentiary shortcomings. However, even considering all of plaintiff's submissions, plaintiff's motion for summary judgment fails. Accordingly, the court denies defendant's motion (DE # 99) as moot.

Plaintiff has moved to strike the affidavits used by defendant in its response to plaintiff's summary judgment motion. (DE # 106.) In essence, plaintiff contends that this court should strike defendant's affidavits because the affidavits from defendant's managers purportedly contradict their prior statements to the EEOC, contradict defendant's prior EEOC position statements, and contradict other unidentified evidence before this court. (DE # 106-3 at 1.)

Defendant is correct that plaintiff has provided this court with "no authority allowing courts to strike affidavits because they contradict prior representations to the EEOC or because [p]laintiff disagrees with their content." (DE # 116 at 1.) While a court can strike an affidavit that contradicts other, previous, sworn statements or deposition testimony by the same party (which would not include an unsworn EEOC position statement of defendant), when statements in an affidavit contradict any other types of evidence before a court, those discrepancies merely create an issue of credibility that goes to the weight of the affidavit and does not render the affidavit inadmissible. *See Buckner v. Sam's Club, Inc.,* 75 F.3d 290, 292 (7th Cir. 1996); *Tippens v. Celotex Corp.,* 805 F.2d 949, 954 (11th Cir. 1986). Accordingly, plaintiff's motion to strike defendant's affidavits (DE # 106) is denied.

## IV.  CONCLUSION

The court has generously considered plaintiff's filings despite their disorganized nature and the numerous and sometimes egregious failures to abide by the rules of procedure and evidence that govern proceedings in federal court. In the future, all filings must conform to the appropriate rules of procedure and evidence, including the local rules of this district.

For the reasons discussed in detail in the preceding paragraphs, plaintiff's summary judgment motion (DE # 26) is **DENIED**. Plaintiff's motion to strike (DE # 106) is **DENIED.** Defendant's motion to strike (DE # 99) is **DENIED** as moot. Any further dispositive motions are to be filed by July 28, 2010.

**SO ORDERED.**

Date: April 28, 2010

s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT