UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SANDRA PETERS,        )
        )
      Plaintiff,       )
        )
      v.       )      No. 3:07 CV 631
        )
WAL-MART,        )
        )
      Defendant.       )

**OPINION and ORDER**

## I.   BACKGROUND [1]

Plaintiff began working as an apparel stocker at Wal-Mart in July of 2005. During plaintiff's time at Wal-Mart, a contentious relationship developed between plaintiff and her supervisor, an assistant manager at Wal-Mart named Rodney Shoaf. Throughout plaintiff's filings in this case, plaintiff has repeatedly alleged that Shoaf humiliated her, took other employees' sides in disputes, discriminated against her, and harassed her. According to plaintiff, "no manager should be allowed to treat their employees the way Rodney has been allowed to treat me." (DE # 26-3 at 3.)[2]

---

[1] In its order denying plaintiff's first motion for summary judgment, this court summarized the facts of this case in additional detail. The factual record (that is, admissible evidence not stricken or disallowed by the court in this or other orders) has remained largely unchanged since the court's prior order, and an abridged version of the facts is provided herein.

[2] It appears that plaintiff also had a strenuous relationship with a co-worker named Athenia Cook. (*See, e.g.,* DE # 26 at 2.)

Plaintiff's issues with Shoaf came to a head on May 30, 2007, when plaintiff had a verbal altercation with Shoaf. According to plaintiff, she told Shoaf that she could not process freight due to her high blood pressure. Shoaf then asked her to get documentation regarding her medical condition, and told her that if there was not anything from a doctor in her file she should be able to get her work done. Plaintiff reiterated that she could not complete the work, and said she was going to the emergency room to get documentation because Shoaf was prying into her medical history and told Shoaf that he was a liar. After the altercation, at approximately 10:30 p.m., plaintiff left work and went to the hospital where she remained overnight. Plaintiff claims that she has been on medical leave ever since, and contends she suffers from post-traumatic stress disorder as a result of the abuse she experienced. Plaintiff further claims that Shoaf did not file a work-related incident report or report the incident to the Indiana Workman's Compensation Board until 5 months after the incident.

Plaintiff initially filed her *pro se* complaint in this case on December 24, 2007. (DE # 1.) Plaintiff amended her complaint numerous times, and then filed a *pro se* motion for summary judgment on March 4, 2008. (DE # 26.) In her amended complaints and motion for summary judgment, plaintiff claimed that defendant discriminated against her because of her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, and in violation of her equal rights under law pursuant to 42 U.S.C. § 1981. Plaintiff also alleged that defendant created a hostile work environment for her, which caused her to suffer from post-traumatic stress disorder.

Plaintiff further claimed that defendant retaliated against her for filing a charge with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff eventually retained counsel to represent her in this matter, and, through counsel, filed her reply brief in support of her motion for summary judgment, as well as other documents in an attempt to correct the procedural and evidentiary problems of plaintiff's *pro se* filings.

In denying plaintiff's first motion for summary judgment, this court noted that "plaintiff's filings– both those filed *pro se* and those filed through counsel– 'appear to have simply collected the sum total of all the unpleasant events in [her] work history . . . , dumped them into the legal mixing bowl of this lawsuit, set the Title VII-blender to puree and poured the resulting blob on the court.'" (DE # 147 at 2, citing *Davis v. Con-Way Transp. C. Express, Inc.,* 368 F.3d 776, 782 (7th Cir. 2004).) This court explained that "'[j]udges are not like pigs, hunting for truffles buried in briefs' and other filings.'" (*Id.,* citing *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991).) Finally, this court stated that it had "expended considerable time and resources in attempting to decipher plaintiff's arguments regarding each of her claims" in order to present the best characterization of what it believed plaintiff had attempted to argue. (*Id.*)

At the conclusion of this court's order on plaintiff's motion, the court took the unusual step of addressing the procedural shortcomings of plaintiff's motion and related filings, and reiterated to plaintiff's counsel that the procedural rules of the federal court system and of this district were not optional and must be followed in the future. Specifically, the court stated:

> The court has generously considered plaintiff's filings despite their disorganized nature and the numerous and sometimes egregious failures to abide by the rules of procedure and evidence that govern proceedings in federal court. In the future, all filings must conform to the appropriate rules of procedure and evidence, including the local rules of this district.

(*Id.* at 15.) Despite forgiving numerous procedural deficiencies in order to afford plaintiff every benefit of the doubt, this court ultimately denied plaintiff's motion for summary judgment because she could not demonstrate that no reasonable jury could find for defendant on her claims. (*Id.*) This court set a deadline of July 28, 2010, for the filing of any further dispositive motions. Approximately six weeks before the dispositive motion deadline, plaintiff filed a motion to amend her complaint, which defendant opposed. (DE # 148.) Though plaintiff did not meet the dispositive motion deadline, both plaintiff and defendant eventually filed a motion for summary judgment. (DE ## 152, 158.) Finally, plaintiff filed a motion for sanctions against defendant. (DE # 188.) The court will address each of these motions in turn below.

## I.      PLAINTIFF'S MOTION TO AMEND COMPLAINT

On June 10, 2010, plaintiff filed a motion to amend her complaint for the seventh time. (DE # 148.) The motion came two-and-a-half years into the litigation, twenty-one months after plaintiff's attorney made his first appearance in the case, eighteen months after the deadline for amending the pleadings without seeking leave of court, six weeks after the close of discovery, and approximately six weeks before the dispositive motion deadline. Defendant opposed the motion, citing undue prejudice given the close of discovery and the swiftly approaching dispositive motion deadline. (DE # 150.)

4

At a RULE 16 conference held early on in this litigation, Magistrate Judge Nuechterlein set a deadline of November 30, 2008, for the parties to complete their amendments to the pleadings. (DE # 90.) Up until that date, the parties were entitled to amend the pleadings under the liberal amending standards of RULE 15. However, after the deadline for amending the pleadings passes, a party seeking to amend a pleading must show "good cause" for the amendment under RULE 16. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.,* 424 F.3d 542, 553 (7th Cir. 2005). The good cause standard focuses on the diligence of the party seeking the amendment. *Id.* (citing with approval *Johnson v. Mammoth Recs., Inc.,* 975 F.2d 604, 609 (9th Cir.1992)). If that party was not diligent, the inquiry should end. *Johnson,* 975 F.2d at 609.

A "'trial judge is particularly well-situated to judge the worthiness of a plaintiff's motion to amend his complaint, having been involved in the progress of the case throughout its development and having viewed first-hand the party's diligence or lack thereof.'" *Campbell v. Ingersoll Mill. Mach. Co.,* 893 F.2d 925, 927 (7th Cir. 1990) (quoting *Bohen v. City of East Chicago,* 799 F.2d 1180, 1185 (7th Cir. 1986)). A district court's decision to deny leave to amend a pleading after a deadline for final amendments is reviewed only for abuse of discretion, *id.* at 925, and will be reversed "only if no reasonable person could agree with its decision." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wis., Inc.,* 991 F.2d 1249, 1257 (7th Cir. 1993).

Plaintiff's counsel argues that he could not have rectified the errors of plaintiff's *pro se* filings by the November 30, 2008, deadline because plaintiff's *pro se* filings were "voluminous." (DE # 151 at 4.) This is indeed true, and the court is cognizant of the fact

that plaintiff's counsel first appeared in this case on September 2, 2008, three months before the November 30 deadline. However, plaintiff's counsel does not provide any explanation, much less demonstrate good cause, as to why he waited eighteen months to rectify the errors he believed were contained in plaintiff's *pro se* complaints.

The only allegation included in plaintiff's proposed amended complaint that plaintiff's counsel truly could not have reasonably pleaded by November 30, 2008 (or within a reasonable time after his appearance), was the allegation regarding plaintiff's termination, because it allegedly occurred in November of 2009. (DE # 150 at 3.) Nonetheless, plaintiff's counsel waited seven months, and until after the close of discovery, to amend the complaint to include this allegation. This deprived defendant of the opportunity to conduct discovery with an eye to this particular accusation, which was not brought to defendant's attention as a possible basis for this lawsuit via an EEOC charge or plaintiff's original *pro se* filings like the bulk of plaintiff's other allegations.

Given the late stage at which the amendment was sought, the fact that discovery had closed in this case six weeks prior to the proposed amendment, and the fact that plaintiff's attorney had been assigned to this case for twenty-one months before deciding to move to amend the complaint based on facts that, for the most part, occurred far in the past, the court cannot discern any good cause for the amendment, and plaintiff's counsel has provided none himself. Accordingly, the motion to amend the complaint is denied.

## II.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.   Defendant's Motion to Strike Plaintiff's Response Brief

On July 28, 2010, defendant timely filed a motion for summary judgment. Under this district's local rules applicable at the time, plaintiff had 28 days within which to respond to defendant's motion, N.D. IND. LOCAL R. 56.1(a), plus three additional days because defendant served its motion on plaintiff via the court's electronic filing system, FED. R. CIV. P. 6(d). Therefore, the deadline for plaintiff's response brief was August 28, 2010. Because August 28 was a Saturday, FED. R. CIV. P. 6(a)(3) extended plaintiff's deadline until Monday, August 30. Plaintiff filed her response on September 7. (DE # 168.)[3]

Defendant has moved to strike plaintiff's response as untimely. (DE # 173.) Plaintiff admits that the brief was not timely filed, but argues that the delay was the result of "excusable neglect" because plaintiff's counsel was operating under a prior version of FED. R. CIV. P. 6 which excluded weekends and holidays from calculation of time. (DE # 182 at 2.) In reply, defendant points out that the exclusion of weekends and holidays from the calculation of time under former RULE 6 only applied in situations where the "period of time prescribed or allowed [was] less than 11 days." FED. R. CIV. P. 6(a) (prior to Dec. 1, 2009, amendments). Defendant argues that because plaintiff's 28-day response deadline was far longer than 11 days, RULE 6 would not have excluded

---

[3] Counsel for plaintiff actually filed the response twice on September 7– once with exhibits (DE #168), and once without (DE # 167). The court refers to plaintiff's filing that included exhibits (DE # 168) as plaintiff's response for purposes of this opinion.

weekends and holidays from the computation of time for the filing of plaintiff's response brief and therefore plaintiff's purported explanation for the delay is unfounded.

The Seventh Circuit Court of Appeals has repeatedly approved of district courts' strict enforcement of local rules against parties that fail to comply with them. *E.g.*, *Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 567 (7th Cir. 1992). This has been the case even where the parties' shortcomings were not willful, repeated, or recalcitrant. *Id.* A district court has discretion to reject late filings that violate the court's rules, and its judgment will be disturbed only when it abuses that discretion. *Wienco*, 965 F.2d at 567-68. In determining whether a district court has abused its discretion in rejecting a late filing, the Seventh Circuit Court of Appeals has applied the "excusable neglect" standard outlined in *Pioneer v. Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). In *Pioneer*, the Supreme Court held that the excusable neglect standard "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

In this case, the length of the delay was over one week, a significant period of time given that the original time allotted for plaintiff's filing was only four weeks. Courts have refused to find excusable neglect in situations involving much shorter delays. *See, e.g., Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) (district

8

court properly refused to find excusable neglect regarding response to motion for summary judgment filed three days late). Further, as defendant points out, plaintiff's rationale for the delay is based on an incorrect reading of an outdated version of a FEDERAL RULE OF CIVIL PROCEDURE. "'The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules.'" *Prizevoits v. Ind. Bell Tel. Co.,* 76 F.3d 132, 133 (7th Cir. 1996) (quoting *In re Cosmopolitan Aviation Corp.,* 763 F.2d 507, 515 (2d Cir. 1985)). Thus, even if plaintiff did not act in bad faith, the delay was entirely within the reasonable control of plaintiff's counsel.

Any prejudice to defendant from the delay may have been minimal, but the Seventh Circuit has held that a failure to timely file a response brief impacts the opposing party's responsibility to file a reply brief, creating at least a danger of prejudice sufficient to support a district court's decision to reject an argument of excusable neglect. *Raymond,* 442 F.3d at 606. The same is true for the fact that plaintiff's failure did not significantly delay judicial proceedings. As the Seventh Circuit has stated, the fact that a district court judge does not ultimately issue an order on the motion at issue until much later is "irrelevant" to whether it may enforce the deadlines imposed by local rules. *Id.*

In sum, while the delay in the filing of plaintiff's response brief may not have been the result of bad faith and the impact on proceedings and the danger of prejudice to defendant may have been minimal, these considerations are outweighed by the length of the delay and the failure to offer an acceptable reason for the delay.

9

Importantly, this court has already issued a written warning to plaintiff's counsel regarding procedural failings in the past. In light of all of these circumstances, the court finds that plaintiff's failure to timely file her response brief was not the result of excusable neglect. Accordingly, defendant's motion to strike plaintiff's brief filed in response to defendant's motion for summary judgment is granted, plaintiff's response brief is now stricken from the record.

### B.    Plaintiff's Motions to Strike

Plaintiff has moved to strike defendant's reply brief filed in support of its own motion for summary judgment because defendant raised additional issues not addressed in its original motion. (DE # 178.) Because plaintiff's response brief has been stricken from the record, defendant's reply brief is largely unnecessary. Accordingly, the court grants plaintiff's motion to strike defendant's reply brief and the court will not consider it for purposes of this opinion.

Plaintiff has also moved to strike numerous paragraphs contained in affidavits submitted by defendant in support of its motion for summary judgment. (DE # 171.) The court need not consider any of the contested affidavits in order to resolve defendant's motion for summary judgment in defendant's favor. Accordingly, the court assumes without deciding that plaintiff's motion to strike should be granted and the court will not consider: paragraphs 6, 7, 11, 13, 15-19, 22, 23, 28-31, 33, 34, 36, or 39 of Larry Schumacher's affidavit (DE # 154-3); footnote 4 of defendant's brief in support of its motion for summary judgment; paragraphs 15, 25, 26, and 27 of Rodney Shoaf's affidavit (DE # 154-4); paragraph 7 of Julie Caldwell's affidavit (DE # 154-5); paragraph

5 of Brian Garner's affidavit (DE # 154-6); and paragraph 8 of Paula Vanlew's affidavit (DE # 154-7). The court will also disregard the summary of Shoaf's affidavit contained in defendant's brief, and instead will rely on Shoaf's statements in paragraphs 14 and 24 of his affidavit. The court now turns to the substance of defendant's motion for summary judgment.

### C.   Summary Judgment Legal Standard

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). The non-movant must do more than raise some metaphysical doubt as to the material facts; he must come forward with specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Carmichael,* 605 F.3d at 460 (citing *Anderson,* 477 U.S. at 251-52). The non-moving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those

12

inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

Above, the court granted defendant's motion to strike plaintiff's brief filed in response to defendant's motion for summary judgment. This finding impacts the court's approach to analyzing defendant's motion for summary judgment. LOCAL RULE 56.1, as it existed at the time, stated: "[T]he court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion." Because plaintiff's response, including her Statement of Genuine Issues, was untimely and will not be considered, defendant's version of the facts, to the extent that it is supported by admissible evidence, is to be deemed admitted to exist without controversy. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011) (addressing district court's application of C.D. ILL. LOCAL RULE 7.1 and affirming that "[b]ecause [the plaintiff's] statement of disputed facts was not properly before the district court, the court could accept as true the undisputed facts set forth by [the movant].").

However, "[s]trict enforcement of [local rules and deadlines] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, that failure "causes all factual assertions alleged by the opposing party to be deemed admitted" and this court must still "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.* Accordingly, the

court's task will be to examine the factual record in this case to determine whether defendant has met its burden of demonstrating a lack of genuine issues of material facts warranting summary judgment in its favor.

### D.   Discussion

As the court summarized in its prior order denying plaintiff's motion for summary judgment, plaintiff's voluminous filings and the admissible evidence not stricken or disallowed by the court in this or any other order can be boiled down to essentially the following allegations of discrimination: (1) defendant did not allow plaintiff to modify her schedule; (2) plaintiff was reprimanded rudely by her supervisor with regard to a dispute with co-worker Athenia Cook; (3) plaintiff was not trained on how to use a "walkie-stacker," unlike fellow employees who were white males; (4) plaintiff was required to take a drug test after a previous workplace injury involving a machine scrubber in accordance with company policy but the caucasian co-worker who caused the accident was not; (5) defendant kept plaintiff under "close surveillance"; (6) defendant gave her a written coaching in May 2007; (7) defendant gave plaintiff difficult work assignments; (8) the co-worker who caused plaintiff to be injured on the job was disciplined differently than a co-worker who caused a caucasian co-worker's injury; (9) defendant improperly calculated plaintiff's pay; (10) defendant improperly handled plaintiff's worker's compensation benefits claim; and (11) defendant denied plaintiff promotional opportunities.

Plaintiff also alleges that defendant harassed her and created a hostile work environment in two ways. First, plaintiff alleges that she was exposed to racial epithets

in phone calls that were made by outside callers into the store and that the phone calls were not investigated adequately. Plaintiff also alleges that her supervisor, Shoaf, "verbally berated" her after plaintiff's argument with a co-worker about assisting a customer in a fitting room. Finally, plaintiff appears to assert that after she filed a discrimination charge with the EEOC, defendant delayed her workers compensation claim, kept her under close surveillance while she performed her duties at work, and increased her workload by making her work by herself instead of with other employees. Each of these three claims – discrimination, harassment, and retaliation – will be addressed in turn below.

### 1.    Discrimination

Plaintiff alleges that defendant violated Title VII of the Civil Rights Act of 1964, which forbids an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

A plaintiff may prove employment discrimination under Title VII using either the "direct method" or the "indirect method." *See, e.g., Cerruti v. BASF Corp.*, 349 F.3d 1055, 1060-61 (7th Cir. 2003). Under the direct method of proof, a plaintiff must show through the preponderance of direct and/or circumstantial evidence that the employer's decision to take an adverse job action against the plaintiff was motivated by an unlawful purpose, such as race or sex. *Id.* at 1061. As defendant correctly points out, the record contains no evidence demonstrating that any of defendant's alleged decisions

to take any adverse job actions against plaintiff were motivated by race or gender. Accordingly, the direct method of proof cannot be employed in this case.

Using the indirect, or "burden-shifting," method, the plaintiff carries "the initial burden under the statute of establishing a prima facie case of . . . discrimination." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). To establish a prima facie case of discrimination, a plaintiff must offer evidence that: (1) she is a member of a protected class; (2) her job performance was meeting the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably. *Coleman v. Donahoe,* 667 F.3d 835, 845 (7th Cir. 2012). Once such a showing is made, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.* If the employer does so, then the burden shifts back to the plaintiff to offer evidence suggesting that the offered explanation is a pretext for discrimination. *Id.*

In this case, the court begins by analyzing the third element of the prima facie case, the requirement that plaintiff demonstrate that she suffered an adverse employment action, as most of plaintiff's allegations of discrimination fail on this element. "'Not everything that makes an employee unhappy is an actionable adverse action.'" *Johnson v. Siemens Bldg. Techs., Inc.,* 273 Fed. Appx. 543, 547 (7th Cir. 2008) (quoting *Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 780 (7th Cir. 2007), alterations omitted). An adverse employment action is a "'materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or

16

an alteration of job responsibilities.'" *Id.* (quoting *Cerros v. Steel Tech., Inc.,* 288 F.3d 1040, 1044 (7th Cir. 2002), alterations in *Johnson*).

The court fully summarized plaintiff's eleven allegations of discrimination previously in this order. *See supra* at 14-15. The first seven of those allegations– that defendants would not allow her to modify her schedule, reprimanded her rudely, failed to train her on certain equipment, required her to take a drug test, kept plaintiff under "close surveillance," gave her a written coaching, and gave her difficult work assignments – fail to establish an adverse employment action as a matter of law. *Grube v. Lau Indust., Inc.,* 257 F.3d 723, 728 (7th Cir. 2001) (employer's decisions regarding plaintiff's working hours do not rise to level of adverse employment action); *Oest v. Ill. Dep't of Corrs.,* 240 F.3d 605, 613 (7th Cir. 2001) (oral reprimands that carry no tangible job consequence are not adverse employment actions); *Johnson,* 273 Fed. Appx. at 547-48 (failure to train was not adverse employment action where compensation was unaffected); *Keys v. Foamex, L.P.,* 264 Fed. Appx. 507, 510-11 (7th Cir. 2008) (drug test requirement performed in routine fashion in accordance with regular and legitimate practices of employer is not actionable adverse employment action); *Strasser v. Sec. Fed. Sav. Bank,* No. 4:00CV0070AS, 2002 WL 1023148, at *7 (N.D. Ind. Mar. 28, 2002) (frequent surveillance does not constitute adverse employment action); *Longstreet v. Ill. Dep't of Corrs.,* 276 F.3d 379, 384 (7th Cir. 2002) (negative performance evaluations that did not result in tangible job consequences were not adverse employment actions); *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 539 (7th Cir. 2007) ("harder work assignments do not constitute an adverse employment action"). Plaintiff's eighth allegation– that the co-

17

worker who caused plaintiff's mechanical scrubber-related injury was disciplined differently than a co-worker who caused a caucasian co-worker's injury–does not suggest that any employment action, much less an adverse one, was taken against *her* at all. Because none of the aforementioned allegations constitute adverse employment actions, plaintiff cannot establish her prima facie by relying on these allegations.

Plaintiff's ninth and tenth allegations are that defendant improperly calculated plaintiff's pay and that defendant improperly handled plaintiff's worker's compensation benefits claim. However, the record contains no admissible evidence that plaintiff was treated less favorably than other similarly situated associates when it came to her pay or the handling of her worker's compensation benefits claim, so plaintiff cannot establish her prima facie case with regard to these alleged employment actions. *Ford v. Minteq Shapes and Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009) (claim that plaintiff was treated disparately with regard to compensation failed without evidence that similarly situated workers received more compensation).

As to plaintiff's last claim that she was denied promotional opportunities, the Seventh Circuit has made it clear that to establish a prima facie case in a failure-to-promote situation, a plaintiff must establish that she applied for the position sought. *Grayson v. City of Chicago,* 317 F.3d 745, 748 (7th Cir. 2003). Defendant points out that the record lacks evidence showing that plaintiff actually applied for the promotional opportunities at issue. (*See also* DE # 152-2 at 24-31, 37; Pl.'s Dep. 150-166, 179.) Accordingly, plaintiff cannot establish a prima facie case of discrimination with respect to her allegation that defendant failed to promote her.

In sum, defendant has sufficiently demonstrated that plaintiff is unable to establish all of the elements of a prima facie case of discrimination with respect to any of the allegations that can be discerned from plaintiff's filings and the factual record. Accordingly, defendant is entitled to summary judgment on plaintiff's discrimination claim. *See Lewis v. City of Chicago,* 496 F.3d 645, 652 (7th Cir. 2007).

        2.     *Harassment*

Plaintiff also alleges that defendant illegally harassed her and created a hostile work environment in several ways. First, plaintiff alleges that she was exposed to racial epithets in phone calls that were made by outside callers into the store and that the phone calls were not investigated adequately. Plaintiff also alleges that her supervisor, Shoaf, verbally berated and sometimes made her work by herself.

To survive defendant's summary judgment motion on her harassment claim, plaintiff must show: (1) she was subject to unwelcome harassment; (2) the harassment was based on her race or gender; (3) the harassment was severe or pervasive so as to alter the conditions of plaintiff's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Williams v. Waste Mgmt. of Ill., Inc.,* 361 F.3d 1021, 1029 (7th Cir. 2004).

With regard to plaintiff's argument that she was subjected to racial epithets from outside callers into the store, defendant argues that plaintiff alleges that she received only one phone call containing any racially offensive language, and that such an allegation is insufficient to support a hostile environment claim. Though it is difficult to discern from plaintiff's deposition testimony, it does appear that while other Wal-Mart

employees received racially hostile prank phone calls, plaintiff, herself, only received one prank phone call that was racially hostile. (DE # 154-2 at 46; Pl.'s Dep. 200:20-25.) To the extent that plaintiff rests her harassment claim on this single call, the claim cannot survive because the alleged harassment was not sufficiently severe or pervasive. "'[O]ffhand comments, and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." *Dandy v. United Parcel Service, Inc.,* 388 F.3d 263, 271 (7th Cir. 2004) (quoting *Adusumilli v. City of Chicago,* 164 F.3d 353, 361 (7th Cir. 1998)).

Even if plaintiff received more than one phone call, plaintiff's claim would still fail because the record contains no evidence that defendant should be liable, as her employer, for the callers' conduct. An employer can be liable for harassment committed by third parties if it "unreasonably fail[ed] to take appropriate corrective action . . . reasonably likely to prevent the misconduct from recurring." *Lapka v. Chertoff,* 517 F.3d 974, 984 n.2 (7th Cir. 2008). The best evidence for plaintiff in the record on this issue is plaintiff's own deposition testimony, in which she states that defendant never informed her that any investigation occurred. (DE # 154-2 at 52, Pl.'s Dep. 213:7-9.) Plaintiff further attested that she believed Wal-Mart could simply call the phone company if it wanted to trace a call. (*Id.* at 47, Pl.'s Dep. 201:20-25.)

Even when taken in a light most favorable to plaintiff, these statements only demonstrate plaintiff's knowledge and/or beliefs about defendant's investigation or the lack thereof; they reveal nothing about the actual investigation itself. In short, plaintiff lacks sufficient evidence to demonstrate that defendant failed to take corrective action

reasonably likely to prevent the calls from recurring. Thus, defendant has fulfilled its burden on its motion for summary judgment by pointing out plaintiff's lack of proof on the issue of defendant's failure to investigate. Further, plaintiff has failed to create an issue of fact on the matter. Accordingly, defendant is entitled to summary judgment on plaintiff's harassment claim against defendant based on racial epithets uttered by outside callers to the store.

Plaintiff also alleges that her supervisor, Shoaf, verbally abused her by speaking to her in a raised voice and humiliated her in front of other coworkers by yelling and "dictating." (DE # 154-2 at 74, Pl.'s Dep. 248:6-16.) Plaintiff also alleges that Shoaf contributed to a hostile work environment by frequently making her work by herself. (DE # 154-2 at 75-76, Pl.'s Dep. 248:18 - 249:25.) To the extent that plaintiff's hostile environment claim is based on the foregoing allegations, her claim fails because there is no evidence in the record that any of Shoaf's actions were based on plaintiff's race or gender. As the Seventh Circuit aptly explained:

> Federal law provides that an employee is to be free from racial discrimination in the workplace, which includes freedom from a racially-hostile work environment. It does not guarantee a utopian workplace, or even a pleasant one. If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated. In short, personality conflicts between employees are not the business of the federal courts.

*Vore v. Indiana Bell. Tel. Co., Inc.,* 32 F.3d 1161, 1162 (7th Cir. 1994) (rejecting hostile work environment claim due to lack of evidence of racial animus). Because defendant has successfully pointed out that the record contains no evidence that Shoaf spoke harshly

to plaintiff or made plaintiff work by herself on the basis of her race or gender, and because plaintiff has failed to create an issue of fact as to the same, defendant is entitled to summary judgment on plaintiff's hostile environment claim to the extent that it is premised on those allegations.

### 3.    Retaliation

Plaintiff's final cause of action is for retaliation in violation of Title VII. The record and the facts articulated by plaintiff in her complaint and prior filings suggest that plaintiff relies on several factual bases to support her retaliation claim. Specifically, plaintiff appears to assert that after she filed a discrimination charge with the EEOC, defendant: (1) did not file her workers compensation claim for up to 5 months; (2) kept her under close surveillance while she performed her duties at work; and (3) increased her work load.

Under Title VII's anti-retaliation provision, it is unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Like a discrimination claim, a retaliation claim can be established through either the direct or indirect method. *Jajeh v. County of Cook,* No. 11-2331, 2012 WL 1522014, at *6 (7th Cir. May 2, 2012). To satisfy the direct method of proof, plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action at the hands of the defendant; and (3) there was a causal link between the protected activity and the adverse employment action. *Id.*

If plaintiff is unable to satisfy the direct method of proof, she may also proceed under the indirect method of proof. Under the indirect method of proof, a plaintiff must first establish a prima facie case of retaliation by showing that: (1) after lodging a complaint about discrimination, (2) only she, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action, even though (4) she was performing his job in a satisfactory manner. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005). Thereafter, the burden is placed on defendant to provide a legitimate, non-discriminatory reason for the challenged action. *Id.* If defendant does so, the burden returns to plaintiff to establish that those proffered reasons were pretextual. *Id.*

Importantly, both the direct and indirect methods of proving a retaliation claim require plaintiff to demonstrate an adverse employment action. *See Jajeh,* 2012 WL 1522014, at *6 (articulating adverse employment action as element of plaintiff's retaliation claim under direct method of proof); *Whittaker,* 424 F.3d at 647 (same, indirect method of proof). Adverse employment actions in the retaliation context are "not limited to discriminatory action that affect the terms and conditions of employment." *Burlington N. and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 64 (2006). However, a plaintiff must show that the alleged retaliatory action was "materially adverse," meaning that it might well have dissuaded a reasonable worker from engaging in a protected activity. *See id.* at 68.

23

In this case, plaintiff argues that because she filed a discrimination charge with the EEOC, defendant delayed her workers compensation claim, kept her under close surveillance, and increased her workload. However, courts have persuasively reasoned that none of these types of actions constitute adverse employment actions in the retaliation context. *See, e.g., McCullers v. Napolitano,* 427 Fed. Appx. 190, 196 (3d Cir. 2011) (delay in processing workers compensation claim did not constitute adverse employment action); *Harris v. Firstar Bank Milwaukee, N.A.,* 97 Fed. Appx. 662, 665 (7th Cir. 2004) (increased scrutiny by supervisor does not constitute adverse employment action); *Wilson v. TecStar Mfg. Co.,* No. 04-CV-233, 2007 WL 201051, *7 (E.D. Wis. Jan. 23, 2007) (same); *Lapka,* 517 F.3d at 986 (increased work load did not constitute adverse employment action). This court agrees and finds that the actions alleged by plaintiff in this case do not amount to adverse employment actions for purposes of plaintiff's retaliation claim. Because defendant has pointed out plaintiff's inability to satisfy the adverse employment action requirement of her retaliation claim, and because plaintiff has failed to create an issue of fact on the same, defendant is entitled to summary judgment on that claim.

In sum, defendant has met its burden on its motion for summary judgment to demonstrate a lack of genuine issues of material fact regarding plaintiff's discrimination, harassment, and retaliation claims. Accordingly, defendant's motion for summary judgment is granted.

## III.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff also filed a second motion for summary judgment and accompanying memorandum. (DE # 155.) Despite the fact that the court provided the parties with three months within which to file any dispositive motions, with all motions to be filed by July 28, 2010, plaintiff filed her motion on July 29, 2010 (DE # 155), along with a belated motion for an extension of time to file the same (DE # 157). No exhibits were filed with the motion for summary judgment. Further, despite the mandate of LOCAL RULE 7.1 that supporting briefs must not exceed 25 pages, plaintiff's memorandum in support of her motion for summary judgment was 98 pages in length.

In the belated motion for an extension of time within which to file the motion for summary judgment, plaintiff's counsel explained that "due to technical problems with transmission," he was not able to scan and file numerous and lengthy exhibits in support of the motion by the deadline, nor a motion for leave to file a brief in excess of 25 pages. (DE # 157.) Plaintiff's counsel further stated that "the Memorandum submitted was not the edited version of the Memorandum intended to be filed with the Court." (*Id.* at 1.) Four days later, plaintiff's counsel filed a revised motion for summary judgment (DE # 158), without a supporting memorandum, and moved for leave to file a brief in excess of 25 pages. (DE # 159.) The following day, plaintiff filed a revised memorandum, still 98 pages in length, and its accompanying exhibits. (DE # 161.) Several very large exhibits consisting of deposition testimony were almost completely illegible. (*See, e.g.,* DE # 161, Ex. H1 - J.) One month later, on September 3, 2010, plaintiff

moved to substitute hard copies of the depositions for the illegible electronic copies. (DE # 170.)

Defendant moved to strike plaintiff's second motion for summary judgment as untimely. (DE # 162.) As discussed above, the standard courts should employ when deciding whether to accept filings in violation of local rules and deadlines in that of "excusable neglect." *Pioneer,* 507 U.S. at 395. In *Pioneer,* the Supreme Court instructed courts to consider all of the relevant circumstances, including "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

The danger of prejudice to the defendant based on plaintiff's delay was not insubstantial. Under the local rules, defendant had only 14 days within which to respond to plaintiff's motion for summary judgment. LOCAL RULE 56.1. However, after plaintiff filed her motion for summary judgment, she spent the next week filing numerous additional documents, some replacing or correcting other previously filed documents, and some requesting variances from the local rules that had been violated without prior permission. (*See, e.g.,* DE # 155, 156, 157, 158, 159, 160, 161.) Needless to say, it quickly became unclear which of plaintiff's filings defendant should respond to, and in what order; defendant eventually filed a motion to clarify whether it was required to expend time and resources responding to plaintiff's untimely motion for summary judgment. (DE # 164.) If defendant was not in fact prejudiced by the

26

confusion and delay caused by plaintiff's untimely motion and the corrected and related filings that followed, there was certainly a danger of prejudice. *Raymond,* 442 F.3d at 606.

As for the length of the delay, plaintiff's motion for summary judgment and supporting memorandum were not filed until one day after the dispositive motion deadline, a properly edited version of the motion was not filed until four days after the deadline, a properly edited version of the memorandum was not filed until five days after the deadline, and critical supporting evidence for the motion was not offered to the court in legible form until 37 days after the dispositive motion deadline. Even a one-day delay can constitute an unacceptable one. *Spears v. City of Indianapolis,* 74 F.3d 153, 157 (7th Cir. 1996) (district court did not abuse discretion in refusing to consider documents filed one day past deadline). In this case, however, it was 37 days before plaintiff's motion, in its entirety, was offered to the court. This delay is egregious by any measure.

Plaintiff's citation to "technical problems" as justification for the delay is similarly unsatisfactory. Numerous courts have held that issues with technology are insufficient to forgive an untimely filing. *Spears,* 74 F.3d at 157 (district court did not abuse discretion in rejecting counsel's "catastrophic computer failure" as justification for one-day extension to file supporting materials in support of response to motion for summary judgment); *Robinson v. Wix Filtration Corp., LLC,* 599 F.3d 403, 408 (4th Cir. 2010) (counsel's "computer problems" were insufficient to establish excusable neglect);

*United States v. 2005 Chrysler 300C,* 382 Fed. Appx. 531, 533 (8th Cir. 2010) (rejecting counsel's argument that technology problems, amongst other purported issues contributing to delay, constituted excusable neglect). This case is no different. Plaintiff's counsel may have experienced technology issues on the last possible day to file a motion on his client's behalf, but plaintiff's counsel is the one who waited until the last possible day to file. *Farzana K. v. Ind. Dep't of Educ.,* 473 F.3d 703, 705 (7th Cir. 2007) ("Waiting until the last hours [to file] is not diligent; the errors that often accompany hurried action do not enable the bungling lawyer to grant himself extra time. Nothing prevented plaintiff's lawyer from acting a day or a week earlier, so that counsel could recover from any gaffe."). Further, the fact that plaintiff's counsel experienced "technical issues" on July 28 does not explain why plaintiff's counsel waited an additional several days to file "edited" versions of the motion and memorandum, and an additional 37 days to offer legible exhibits.

In conclusion, even if the court assumes that plaintiff's delay in filing her second motion for summary judgment was not the result of bad faith and her untimely motion minimally impacted defendant and the litigation in general, the other circumstances described above far outweigh those assumed facts. Plaintiff's past filings have contained numerous shortcomings, and the court specifically warned plaintiff that it must abide by the rules of this court in future filings. (DE # at 147 at 15.) Plaintiff did not do so. Instead, plaintiff's counsel has offered "technical issues" as the justification for the delay, because when he attempted to file a motion on his client's behalf on the

last possible day, he was unable to do so. These circumstances simply do not amount to excusable neglect.

In *Spears,* a case similar to this one, the Seventh Circuit aptly stated: "Although we are sympathetic with the circumstances of Spears' problems-he alleged a computer breakdown in his office on the due date-it seems to us that the problem was really that he waited until the last minute to get his materials together. Spears apparently neglected the old proverb that 'sooner begun, sooner done.' When parties wait until the last minute to comply with a deadline, they are playing with fire." 74 F.3d at 157. Plaintiff's counsel has been playing with fire throughout the course of this litigation. It is no one's fault but his own that he has now been burned. Defendant's motion to strike plaintiff's second motion for summary judgment is granted.

## IV.    PLAINTIFF'S MOTION FOR SANCTIONS

On November 29, 2010, plaintiff moved for sanctions against defendant for allegedly mischaracterizing some of plaintiff's deposition testimony and submitting affidavits containing perjurous and inaccurate statements in support of its motion for summary judgment. For example, plaintiff states that

> Schumacher's affidavit testimony stated under penalties of perjury that an Overnight Stocker in Softlines is also known as an Overnight Softline Processor. (DE#154-2, ¶ 11). An Overnight Stocker has a different job code than an Overnight Softlines Processor. (DE#161-19, p. 15). An Overnight Softline Processor and an Overnight Stocker each have their own job descriptions. (DE#161-19, p. 21; DE#161-17, pp. 47-48, pp. 81-82). Therefore, Schumacher committed perjury because an Overnight Stocker in Softlines is not also known as an Overnight Softline Processor.

As defendant argues in its response brief, under RULE 11 of the FEDERAL RULES OF CIVIL PROCEDURE, a party seeking sanctions must serve the motion upon the other party 21 days prior to filing the motion with the court. If the non-moving party withdraws or appropriately corrects the challenged document within the 21-day period, the moving party may not file the motion. FED. R. CIV. P. 11(c)(2). Plaintiff does not dispute that she did not serve her motion for sanctions upon defendant at any time prior to filing the motion with this court; in fact she ignores the issue entirely in her reply brief. (*See* DE # 190.) Accordingly, the court now strikes plaintiff's motion for failure to comply with RULE 11. *See Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151 (7th Cir. 1996) (motion for sanctions filed without meeting RULE 11 notice requirements is effectively not a motion at all). In any event, the court has thoroughly reviewed the motion and the alleged misstatements of fact, and the majority of plaintiff's accusations relate to minute factual details which had no bearing on this court's analysis of defendant's motion for summary judgment. Further, the motion is effectively an attempt to attack evidence supplied by defendant in support of its motion for summary judgment. Plaintiff already waged these attacks in its RULE 56 motion to strike (DE # 171), which the court has already addressed in this order. Were plaintiff's motion for sanctions properly before the court, the court would deny it.

30

V.      **CONCLUSION**

For the foregoing reasons, the court:

>   **GRANTS**:
>   - defendant's motion for summary judgment (DE # 152);
>   - defendant's motion to strike plaintiff's motion for summary judgment (DE # 162);
>   - plaintiff's motion to strike portions of the appendix submitted by defendant in support of its motion for summary judgment (DE # 171);
>   - defendant's motion to strike plaintiff's response to defendant's motion for summary judgment (DE # 173);
>   - plaintiff's motion to strike defendant's reply filed in support of its motion for summary judgment (DE # 178);
>
>   **DENIES**:
>   - plaintiff's belated motion to amend the complaint (DE # 148);
>   - plaintiff's belated motion for extension of time to file her motion for summary judgment (DE # 157);
>   - plaintiff's belated motion for extension of time to file response to defendant's motion for summary judgment (DE # 177);
>   - plaintiff's motion for sanctions (DE # 188);
>
>   **DENIES as moot:**
>   - defendant's motion for a scheduling conference (DE # 143);
>   - plaintiff's motion for leave to file excess pages (DE # 159);
>   - defendant's motion to clarify deadline (DE # 164);
>   - plaintiff's motion for leave to substitute records (DE # 170);
>
>   **STRIKES**:
>   - plaintiff's eighth amended complaint (DE # 149);
>   - both versions of plaintiff's motion for summary judgment (DE # 155, 158);
>   - defendant's reply filed in support of its motion for summary judgment (DE # 172);
>   - portions of the appendix submitted by defendant in support of its motion for summary judgment, as explained in this order, *supra* at 10-11;

The Clerk is directed to **ENTER FINAL JUDGMENT,** stating:

> Judgment is entered in favor of Defendant Wal-Mart and against Plaintiff Sandra R. Peters, who shall take nothing by way of her complaint.

**SO ORDERED.**

Date: June 25, 2012

s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT